**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

GERALD THOMAS MESCALL, *Apt 404,*
LAUREL C. BROOM, *Apt 108,*
LYNN R. SINGER, *Apt 309,*
SHIRLEY C. LACEY, *Apt 309,*
SHERRY A. DROUIN, *Apt.328,*
MADELINE V. READER ,*Apt.207,*
JULIE  A. CASH, *Apt.203,*
ALLISON  SANDLER, *Apt. 202,*
DEBRA  A. BARON *Apt. 000,*
ROBERT E. COOK *Apt. 321,*
JEANIE DELISI *Apt. 325,*
FRANCENE CERAOLO *Apt. 325 (2),*
PATRICIA L. JOHNSON *Apt. 320,*
MARY A. ORTIZ *Apt. 120,*
MARY L. GANNON *Apt. 317.*

*Elder Plaintiff(s)*

*-in opposition to-*

RENAISSANCE AT ANTIQUITY, et al.,
GEM MANAGEMENT LLC,
NATIONAL APARTMENT ASSOCIATION(NAA),
CATHY CONNER,
SOLTICE PARTENERS,
LAURA GENAIL.

*Defendant(s)*

_____

FILED
CHARLOTTE, NC

MAY 3 1 2023

US DISTRICT COURT
WESTERN DISTRICT OF NC

No. **3:23 -cv- 332 -RJC**

In Official <u>and</u>
**Individual Capacity**
*Verified Complaint*

# <u>EMERGENCY PRELIMINARY INJUNCTION</u>
## under
## *FED. R. CIVIL PROC. #23(a)(3)* as an <u>ELDER</u> CLASS
## ACTION MATTER

### <u>PREFRATORY AND PARTIES I.</u>

With Good Faith, Prayer, and Cause, comes now an elder class, herewith the lead member of the class, being GERALD T. MESCALL (herein **Mescall**) and *all other members promulgate subject matter most analogous to lead plaintiffs accordingly, and they shall be deemed and named "***CLASS***" herein throughout the complaint, affidavits, and accompanying memorandum of law.* The plaintiffs are; GERALD THOMAS MESCALL (as lead), (LAUREL C. BROOM (herein "BROOM"), LYNN R. SINGER (herein "SINGER"), SHIRLEY C. LACEY, (herein "LACY"), SHERRY A. DROUIN (herein "SHERRY"), MADELINE V. READER (herein READER), JULIE A. CASH, (herein CASH), ALLISON SANDLER(herein SANDLER), DEBRA A. BARON (herein BARON), ROBER E. COOK (herein "COOK"), JEANIE DELISI, (herein Delisi), FRANCENE CERAOLO (herein Ceraolo), PATRICIA L. JOHNSON(herein "Johnson), MARY A. ORTIZ, (herein "Ortiz") and MARY L. GANNON (herein "Gannon") as elder victims of abuse.

Against this backdrop, all of the aforementioned elders adduce *prima facie* allegations of *unlawful* conduct complained of herein *ipso facto* as such and

against("defendants") RENAISSANCE AT ANTIQUITY LLC(herein "the housing complex"), GEM MANAGEMENT LLC (the mother company), NATIONAL APARTMENT ASSOCIATION (lessors), CATHY CONNER( "part owner") SOLTICE PARTNERS(herein "partners, and or potential owners") and LAURA GENAIL(herein "office manager") are all hereby stated as ("defendants") that are requesting emergency equitable preliminary injunctive relief. The elder community plaintiffs' declarations of true factual allegations are adduced in detail and accordingly sworn under **28 U.S.C. § 1746.** Thereof, all elder tenants' rights have been hindered by the defendants by tortiously interfering with their enjoyment of property, old age benefits, pursuit of happiness, and safe housing all the while discriminatorily acting against the mental and physical impingements of the elderly as seniors. The class has been disrupted by the defendants in a staggering number of unlawful ways. Most notably, material misrepresentation of fact, omission of material fact, breach of express and implied contracts, lease agreements, tortious interference with the use of the elder property and its amenities, and most despicable, creating an unsafe elder housing complex post a bait and switch tactic. All of the unlawful conduct is falling under a voluminous amount of NORTH CAROLINA AND FEDERAL elder abuse legislature and congressional intent. And against the background of the underlying basis; all Plaintiffs' rent has increased by more than an average of **[20.62% -55.35%].** That unlawful conduct is

3

most analogous to *usury, elder abuse,* and tellingly hinders *the Americans With Disabilities Act; Older Age Act, Procedural Due Process, Equal Protection of the Law* in the wake of receiving *HUD* funding and subsides from the State of North Carolina and Federal Government. More problematic is that because the defendants operate under *HUD Section 9; 42 U.S.C.§ 1437, their unlawful conduct* only bolsters the pain and suffering claims from these unwealthy fixed income seniors. Additionally, their conduct violates the housing act of 1937, the *Fair Housing Act (42 U.S.C. §§ 3601-3619), North Carolina General Statutes Chapter 108A, Article 6: APS, North Carolina General Statutes Chapter 14, Article 6A, Elder Abuse and Dependent Adults Civil Protection Act, Welfare, and Institutions Code section 15600 et seq. (hereinafter the Elder Abuse Act). Section 15657.*

Furthermore, there is a stark breach of contract that is both expressly written and implied verbally in front of all of the entire CLASS. This cause of action is concerned with the relationship between two parts of the *Elder Abuse and Dependent Adults Civil Protection Act, Welfare,* and *Institutions Code section 15600 et seq. (hereinafter the Elder Abuse Act).* With that being adduced, *Section 15657* provides in part that "[W]here it is proven by clear and convincing evidence that a defendant is liable for physical abuse . . . , neglect . . . , or fiduciary abuse . . . [of an elderly or dependent adult], and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse, in*

4

*addition to all other remedies otherwise provided by law:* **(a)** The court **shall**

award to the plaintiff reasonable attorney's fees and costs. We are proceeding pro

se. **(b)** The limitations imposed by section *377.34 of the Code of Civil Procedure*

[forbidding a decedent plaintiff's estate from obtaining pain and suffering damages]

shall not apply. However, the damages recovered shall not exceed the damages

permitted to be recovered pursuant to subdivision *(b) of Section 3333.2 of the Civil*

*Code [limiting recovery of non-economic losses to $250,000]."* Section 15657.2,

however, on the other hand, this conversely and substantively should not be

adjudged "on its face" of this specific statute but tellingly adjudged by the

problematic underlying the factual violations and noted.

## JURISDICTION AND VENUE II.

This Honorable Court has jurisdiction under *28 U.S.C. § 1331* as a Federal

Question(below). With respect to venue; all applicable CLASS members, residents

and defendants reside and operate in the Western District of North Carolinas'

Charlotte area and at Lake Norman, Cornelius 28031. The defendants are bound

under HUD( U.S. DEPARTMENT OF HOUSING AND URBAN

DEVELOPMENT, Title 42, UNITED STATES CODE. Additionally, the

defendants are bound by the Fair Housing Act, Community Development Act and

Elder Law under the *Affordable Care Acts' Elder Justice Act, 42 U.S.C. §§ 1397j to*

*1397m-1,* AND *Age Discrimination Act.*

5

1. *Under HUD, does that statute guarantee Substantive Due Process in connection with an Elder complex, when the complex did not provide ample notice of a rental increase based off a fundamental right?*

## ELDER ABUSE III.

Elder abuse with rental increases occurs when a landlord or property manager engages in unfair and deceptive practices to increase rental rates for elderly tenants, oftentimes taking advantage of their vulnerability and limited options for finding alternative housing. That shall include usury rates.

Under U.S. law, elder abuse is a crime and is grounds for civil litigation. Many states have specific laws that provide additional protections for elderly individuals, including those related to housing and landlord-tenant relationships, including but not limited to the great State of North Carolina and its respective Federal jurisdictions.

Examples of abusive rental practices that shall be considered elder abuse include:

- Threatening or harassing elderly tenants to pay higher rents than their leases require, increasing rates beyond an implied agreement.

6

- Refusing to make necessary repairs or maintenance to the rental unit to force the tenant to move out or locking them out if they fail to comply with new demands or late payments.

- Using fraudulent or deceptive tactics to induce elderly tenants to sign new leases with **higher** rent amounts or other unfavorable terms including increasing rents at a usury rate.

- Charging excessive late fees or other penalties to elderly tenants who are unable to pay rent on time due to financial constraints or health issues and increasing rents above an implied contractual agreement or expressly promulgated.

If an elderly tenant believes they are being subjected to abusive rental practices, they shall have equitable relief accordingly.

## BREACH OF LEASE, IMPLIED and EXPRSEELY WRITTEN CONTRACTS AGIANST THE ELDER CLASS V.

The defendants have breached the agreements with unsafe housing, elder abuse, and caused negligent infliction of emotional distress *inter alia*. Nowhere in any agreements does it allow for the usury rates to apply. Further, the defendants have promised the CLASS that they would only have "at most a 5% increase a year," because all were on fixed incomes. Each member of the class has sworn under penalty of perjury that this is true.

## LEGAL ARGUMENT IV.

The law allows for any person to report suspected abuse of a dependent adult to the authorities, and requires certain professionals, such as doctors and social workers, to report suspected abuse. The authorities must then investigate the report and take appropriate action to protect the dependent adult.

If a dependent adult has suffered abuse or neglect, they or their representative can file a lawsuit against the abuser to seek damages. The law provides for both compensatory and punitive damages, as well as attorney fees and costs.

Overall, the Dependent Adults Civil Protection Act is an important piece of legislation that provides legal protection to some of the most vulnerable members of society.

Under North Carolina law, landlords are allowed to increase rent during a lease term only if the lease agreement specifically allows for such increases. If there is no provision in the lease agreement for rent increases, the landlord may only raise the rent when the lease term ends, and the tenant signs a new lease.

Furthermore, even if the lease agreement allows for rent increases, the landlord must give the tenant proper notice before increasing the rent. In North Carolina, the notice period depends on the length of the lease term. If the lease term is less than one year, the landlord must give the tenant at least 30 days' notice.

If the lease term is for one year or more, the landlord must give the tenant at least 60 days' notice.

If a landlord increases the rent without proper notice or in violation of the lease agreement, the tenant may have legal recourse. The tenant may be able to challenge the rent increase in court and may be entitled to damages if the increase was unlawful.

It is important for both landlords and tenants in North Carolina to be aware of the laws regarding rent increases to avoid any legal disputes. Tenants should carefully review their lease agreement to determine if and when rent increases are allowed, and landlords should provide proper notice and adhere to the terms of the lease agreement when raising rent.

As housing prices continue to rise across the country, fixed-income seniors are facing challenges in keeping up with rent increases. This complaint states an overview of the relevant laws, regulations, and policies that impact the issue of rent increases for fixed-income seniors. It also explores potential solutions and legal protections for this vulnerable group.

## I (a). Legal Framework

### A. Federal Laws and Regulations

1. **The Fair Housing Act (FHA) -** This act prohibits discrimination in housing on the basis of race, color, national origin, religion, sex, familial status, and

disability. However, it does not specifically address rent increases for fixed-income seniors.

2. **The Older Americans Act (OAA)** - This act supports a range of services and programs for older adults, including housing assistance. While it does not directly regulate rent increases, it may provide some resources for seniors struggling with housing costs.

## B. State and Local Laws and Regulations

1. Rent control and rent stabilization laws - Many states and cities have rent control or rent stabilization laws that limit the frequency and amount of rent increases. These laws vary significantly by jurisdiction and may offer varying levels of protection for fixed-income seniors.

2. Senior property tax relief programs - Some states and local governments offer property tax relief programs for seniors, which can help alleviate the financial burden of increased housing costs.

3. Legal Challenges and Potential Solutions;

## C. Legal Challenges

1. Lack of uniform protections - The patchwork nature of state and local rent control and stabilization laws means that fixed-income seniors may not receive the same level of protection depending on their location.

10

2. Exemptions and loopholes - Some rent control and stabilization laws may not apply to certain types of housing or may have exemptions that allow landlords to impose higher rent increases in specific situations.

## D. Potential Solutions

1. Expanding rent control and stabilization laws - Advocates for fixed-income seniors may push for the expansion of rent control and stabilization laws to provide more uniform protections for seniors across jurisdictions.

2. Federal intervention - Some advocates may call for federal legislation to address the issue of rent increases for fixed-income seniors, potentially by amending the FHA or OAA to include specific protections for this population.

3. Public-private partnerships - Governments and non-profit organizations may collaborate to create affordable housing options for fixed-income seniors, helping to alleviate the impact of rent increases on this vulnerable group.

4. Legal advocacy - Legal aid organizations can provide support to fixed-income seniors who believe they have been unfairly targeted with high rent increases or who need assistance in understanding their rights under local rent control or stabilization laws.

## II. Relevant North Carolina Elder Laws

### A. North Carolina Landlord-Tenant Law

1. North Carolina General Statutes Chapter 42: The Landlord and Tenant law sets out the rights and obligations of both landlords and tenants, including rent increases and habitability standards.

**B. Fair Housing Act**

1. Federal Law: The Fair Housing Act (42 U.S.C. §§ 3601-3619) prohibits discrimination in housing, including on the basis of age. This includes discrimination through rent increases and the failure to provide safe and habitable housing.

2. North Carolina State Law: North Carolina General Statutes Chapter 41A: State Fair Housing Act further enforces fair housing rights in the state.

**C. Adult Protective Services (APS)**

1. North Carolina General Statutes Chapter 108A, Article 6: APS investigates reports of abuse, neglect, or exploitation of disabled adults, which may encompass elderly individuals in a senior apartment complex.

**D. North Carolina Elderly Protection Law**

1. North Carolina General Statutes Chapter 14, Article 6A: This law protects elderly individuals from financial exploitation, which may include usurious rent increases.

## III. Identified Issues in the Senior Apartment Complex

### A. Usurious Rent Increases

1. Landlord-Tenant Law: Rent increases may be governed by lease agreements or applicable statutes. A rent increase may be considered usurious if it is excessive and unreasonable, violating state law or the lease agreement.

2. Fair Housing Act: Rent increases that disproportionately affect elderly tenants could be a form of discrimination.

### B. Faulty Amenities

1. Landlord-Tenant Law: Landlords have a duty to provide habitable housing, which includes working amenities. Failure to do so may violate the implied warranty of habitability.

2. Fair Housing Act: The denial of functional amenities to elderly tenants could constitute age discrimination.

### C. Unsafe Conditions

1. Landlord-Tenant Law: Landlords are required to maintain safe premises for tenants. Unsafe conditions may breach the landlord's duty to keep the premises habitable.

2. Fair Housing Act: Unsafe conditions that disproportionately affect elderly tenants may be a form of discrimination.

## IV. Legal Remedies

**A. North Carolina Department of Justice:** The Consumer Protection Division may investigate and act against violations of landlord-tenant laws.

**B. North Carolina Human Relations Commission**: This commission enforces the state's Fair Housing Act and may investigate and pursue discrimination claims.

**C. Legal Action:** Tenants may pursue legal action, such as a lawsuit, against the landlord for breaching the lease agreement, violating the Fair Housing Act, or other applicable laws.

The senior apartment complex in North Carolina may be in violation of several elder laws due to usurious rent increases, faulty amenities, and unsafe conditions. Tenants should consult with legal counsel and consider reporting the issues to the appropriate authorities to ensure their rights are protected.

The issue of fixed-income seniors experiencing higher rent increases is a complex one, impacted by a variety of federal, state, and local laws and regulations. As the population ages, addressing this issue will become increasingly important. Advocates for fixed-income seniors may push for expanded legal protections, public-private partnerships to create affordable housing, and legal advocacy to support those affected by high rent increases.

The **Fair Housing Act (FHA)** is a Federal Law in the United States that was enacted in 1968 to prevent discrimination in housing. The FHA prohibits

discrimination based on race, color, religion, sex, familial status, national origin, and disability. In 1988, Congress expanded the scope of the FHA to include protections for people with disabilities and families with children.

For elder seniors, the FHA plays a crucial role in ensuring equal access to housing and preventing age discrimination. Although the FHA does not explicitly mention age as a protected category, it does protect elder seniors from discrimination based on disability and familial status. These protections may be particularly important for seniors who require accessible housing, have age-related disabilities, or live with family members.

Accessible Housing and Reasonable Accommodations

The FHA requires housing providers to make reasonable accommodations for people with disabilities. This means that if an elder senior has a disability and requires an accommodation to have an equal opportunity to use and enjoy their dwelling, the housing provider must comply. Examples of reasonable accommodations may include:

1. Allowing a service animal in a building but has a *"no pets"* policy.

2. Providing a reserved parking space near the entrance for a person with mobility impairments.

3. Allowing a tenant to make modifications to their unit at their own expense to improve accessibility, such as installing grab bars in the bathroom.

Additionally, the FHA mandates that certain multifamily dwellings built after March 13, 1991, must meet specific accessibility requirements. These requirements include:

1. An accessible building entrance on an accessible route.

2. Accessible public and common-use areas.

3. Usable doors, including sufficient clearances and accessible hardware.

4. Accessible routes into and through dwelling units.

5. Light switches, electrical outlets, thermostats, and other environmental controls in accessible locations.

6. Reinforced bathroom walls to allow for the installation of grab bars.

7. Usable kitchens and bathrooms designed to accommodate individuals with disabilities.

**Housing for Older Persons**

The FHA also contains an exemption for "housing for older persons," which allows housing providers to cater specifically to seniors without violating the familial status provisions of the law. To qualify for this exemption, a housing community must meet one of the following criteria:

1. At least 80% of the occupied units must have at least one occupant who is 55 years of age or older, and the housing provider must have policies and procedures in place to maintain this age distribution.

16

2. The housing is *intended* and operated for occupancy by persons 55 years of age, but the lion share is approximately 68 years or older.

In these communities, housing providers can legally restrict residency to seniors, allowing them to offer housing tailored to the unique needs and preferences of elder seniors.

**DECLARATION AND NATURE OF ACTION WITH FACTUAL ALLEGATIONS (SOME DATES ARE OSTENSIBLE AND NOT EXACT), HOWEVER ARE TRUE ALLEGATIONS AS SUCH UNDER 28 U.S.C. § 1746:**

*We the Class, state that all of these statements are true and factual. We are of sound mind but elder, but not in a diminished mental capacity. We The Class have complained to the defendants and Gerald Mescall is only trying to help. We are all under our own volition and swear that everything is accurate and true occurrences of the abuse the class has received.*

1. On or about April 25th, 2019, the elevator broke.(see) police report(s)

2. On or about August 11th, 2019, the elevator stopped working and an elder was stuck having to be removed by the volunteer Fire Department.

3. On or about May 3rd, 2020, the elevator stopped working causing 2 elder residents to be removed by volunteer fire department and Cornelius sheriff's department

4. At the very least, and since 2018, 6 or more times the elevator stopped working.

5. The stairs in 1721 Lovers Lawn Trace or Renaissance at Antiquity are steep and long.

6. The majority of the elderly use walkers, canes, or wheelchairs, however in this complex, it is approximately 35%.

7. When a storm hits, the power ceases to exist.

8. The facility requires a "FOB" which is analogous to a plastic like round cylinder to enter the building, OR a code, if the resident the know the code.

9. Most residents do NOT know the code to get in LOVERS LANE despite their elderly status.

10. Staff work from 9 am to 5 pm Monday through Friday ONLY.

11. Seniors are forgetful, lose keys and are charged at least $25 dollars, if so.

12. There are four stories of apartments, or 4 levels from the ground up.

13. 100% of the community of elder seniors are on a fixed income

14. Social Security is the monetary reliability for the community with some having an extra pension.

15. The facility controls the mail and garbage

16. Elders are forbidden to use any other internet service or phone service other than *AT & T.*

17. The facility has no know formal administrative remedy process or appeal process other than a handmade like "suggestion/complaint" box located in the lobby that is often closed, or unavailable if after hours or for a disabled

person. However, the facility offers a maintenance request form with its logo.

18. The facility was plush when elders endorsed their agreements.

19. The facility changed furniture from plush to garage sale type thereafter filling the building.

20. There is an extremely high turnover rate of elderly people moving in and out.

21. When the building opened, the facility provided Fire Extinguishers for the residents.

22. There are zero fire extinguish in personal apartments after removing because "it was not needed," according to the *office manager* Laura.

23. More than at least 7 maintenance men quit because of the unlawful conduct the facility wanted them to partake in and overwork them.

24. Now, elders are assigned to maintenance work or other tasks assigned by management in a couple members of the class.

25. The furniture in the conference was changed and traded in for garage sale type couches and tables.

26. There was ZERO notification of the usury rental increase.

27. The lobby is closed off to the resident's majority of the time and forbidden to sit in.

28. The pet policy requires a 20% increase or more of rent

29. The computer room is now closed but was open and welcomed as the facility filled up.

30. On or about April 9th and the 26th 04 2023, Gerald Mescall spoke the defendant office manager namely Laura about the rental increase and asked amount the HUD agreement. Laura stated that "we still have the HUD contract, and nothing has changed."

31. On May 18th, 2023, Mescall spoke with co-plaintiff class member Lynn Singer with respect to the HUD agreement and Lynn stated that the office manager adduced that the HUD agreement was nugatory and no longer under effective.

32. If the facility arbitrarily opens the computer room, there is zero ink, or the computers don't work, including the monitor or keyboard or both.

33. The facility is towing cars for DMV violations that are on this private property.

34. No resident is allowed to enjoy the lobby whatsoever, contrary to what was represented at the time of lease or sold, and originally agreed to.

35. Whenever a storm hits and the power often knocked out, many tenants are locked out of the building in wheelchairs, walkers, canes or in a diminished capacity.

36. The Cornelius Police Sheriff's office are contacted on a daily basis for some complaints outside the scope of a medical condition.

37. This a TAX CREDIT FACILITY under HUD(or was)

38. Smokers are forced to stand outside in a broken gazebo area, with no sitting arrangements.

39. A giant portion of the **(86)** Apartment elder tenants stand on a line in the lobby to complain when office hours are available about the usury rates.

40. Elders are treated and discriminated against with a staggering amount complaining that they cannot afford the rental increase or cannot afford to move because they are on a fixed income.

41. HUD PROVIDES statutory protection.

42. Many elder tenants (leases) were verbally explained that the rental increase was based on the normal rates around the area but not taking into consideration the fixed income aspect.

43. All of the class suffers from emotional distress because of the usury increase and inflationary environment.

44. Immediately after the Social Security Increase promulgated by the White House, Gem Management took advantage

45. Several elders at 1721 Lovers Lawn Trace, have seen psychological and primary care doctors because of the increase and added stress after the

horror and of pain moving and stress of somehow coming up with the money.

46. Many elders have asked their families for monetary assistance but were denied

47. The facility held a smoke and mirrors assistance meeting, only to deny the majority for rental monetary help with ad hoc programs.

48. Most elder tenants feel trapped, lost, broken down **AND** financially deprived.

49. The better business bureau has rated GEM with a single star, 5 star is the best.

50. GEM is rife with complaints (27 recently).

22

## **CONCLUSION VI.**

The Fair Housing Act plays a critical role in ensuring that elderly seniors have equal access to housing and are protected from discrimination based on disability and familial status. By requiring reasonable accommodations and accessible housing, the FHA helps seniors maintain their independence and age in place. Additionally, the FHA allows for housing communities specifically designed for older persons, providing seniors with options that cater to their unique needs and preferences. Against this backdrop, The CLASS seeks compensatory damages of **$5,750,000.00 U.S. DOLLARS divided equally <u>AND</u> equitably.**

/s/ *Gerald T. Mescall*

*Pro-Se*

1721 Lovers Lawn
**Apt #404**
Cornelius, NC 28032
704-534-4630

Email: geraldmescall@gmail.com

5/22/23

# <u>Brief Written and Adduced By,</u>
## <u>Mescall</u>

# **NOTE**

Elder abuse refers to intentional or neglectful acts that cause harm or serious risk of harm to an older person, who is typically 60 years of age or older. It can take various forms, including physical, emotional, sexual, financial, and neglect.

Rent increases are a common issue that many people, including seniors, face in North Carolina and other states. In some cases, these increases can be significant, making it difficult for people on fixed incomes, including seniors, to afford their homes.

In North Carolina, there are several organizations and resources available to help seniors who may be experiencing elder abuse or struggling with housing issues. These include the North Carolina Division of Aging and Adult Services, which provides services and resources to help seniors and their families, and the North Carolina Coalition Against Domestic Violence, which provides support and assistance to victims of domestic violence, including elder abuse.

Additionally, North Carolina has laws in place to protect tenants from unfair rent increases. For example, under North Carolina law, landlords must give tenants at least 30 days' notice before increasing the rent, and they cannot increase the rent during the lease term unless the lease allows for it.

In conclusion, elder abuse and rent increases are both important issues that affect seniors in North Carolina and elsewhere. It is essential to raise awareness of these issues and to provide resources and support to those who may be impacted by them.