\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

GERALD THOMAS MESCALL, *Apt 404,*
LAUREL C. BROOM, *Apt 108,*
LYNN R. SINGER, *Apt 309,*
SHIRLEY C. LACEY, *Apt 309,*
SHERRY A. DROUIN, *Apt.328,*
MADELINE V. READER, *Apt.207,*
JULIE A. CASH, *Apt.203,*
ALLISON SANDLER, *Apt. 202,*
DEBRA A. BARON *Apt. 000,*
ROBERT E. COOK *Apt. 321,*
JEANIE DELISI *Apt. 325,*
FRANCENE CERAOLO *Apt. 325 (2),*
PATRICIA L. JOHNSON *Apt. 320,*
MARY A. ORTIZ *Apt. 120,*
MARY L. GANNON *Apt. 317.*

*Elder Plaintiff(s)*

-in opposition to-

No. 3:23-cv-00332-rjc

**In Official *and*
Individual Capacity**
*Verified Complaint*

RENAISSANCE AT ANTIQUITY, *et al.,*
GEM MANAGEMENT LLC,
NATIONAL APARTMENT ASSOCIATION(NAA),
CATHY CONNER,
SOLTICE PARTENERS,
LAURA GENAIL.

*Defendant(s)*

FILED
CHARLOTTE, NC

OCT 17 2023

US DISTRICT COURT
WESTERN DISTRICT OF NC

1

**RESPONSE TO THE DEFENDANTS MOTION TO DISMISS; MEMORANDUM OF LAW AND SHOW CAUSE ORDER; REQUISITION FOR LEAVE TO AMEND PLEADING UNDER *FRCP., (a)(2)* and TO PROCEED AS CLASS WITH GOOD CAUSE OR IN THE ALTERNATIVE APPOINT COUNSEL FOR CO-PLAINTIFFS OR WITHDRAW ALL CO-PLAINTIFFS EXCEPT LEAD PLAINTIFF MESCALL**

## BACKGROUND I.

Plaintiff Gerald Thomas Mescall *(herein thereafter "Mescall")* who is an 82 year old elder laymen, holds similarly situated subject matter complaints as adduced by the class but conversely pleaded by Mescall, and respectfully shows **(1.)** substantive cause as directed by this Honorable Court why the matter should not be dismissed with prejudice, **(2.)** requests the allowance to amend pleading by seeking counsel or withdrawing all co-plaintiffs framed as a "class" and allow only lead plaintiff Mescall to proceed, **(3.)** response to defendants motion to dismiss, and finally **(4.)** good faith as to why Mescalls' response is untimely with a heartfelt apology but nevertheless good cause. Mescall is appearing under a liberal construction doctrine and authorities; *Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975)." Tarpley v. Marshall Concrete Products of Danville, Inc., 798 F.2d 1409 (4th Cir. 1986) Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).*

## SUBSTANTIVE CASUE WHY THE MATTER SHOULD NOT BE DISMISSED WITH PREDJUDICE II.

With good faith, Gerald Thomas Mescall who resides with his close acquaintances in the same exact dwelling also known as "Renaissance at Antiquity," specifically located at *1721 Lovers Lawn Trace, Conelius North Carolina*. Accordingly, this elder housing complex is a HUD based funded senior apartment building rife with OSHA safety problems, dysfunctional elevators, corruption and cover ups pursuant to a death of an elder woman in the wake of a fire hazard (but the staff blames a bogus candle that cause the fire-contrary to fire Marshal findings) smoke alarm FIRE HAZARDS, charlatan management and disingenuous staff. As adduced in the original pleading, Mescall and the co-plaintiffs all share similarly situated subject matter complaint conduct including the instant usuary rental increase. Thus, discovery proceedings, and depositions are warranted in the interest of justice.

Although the law is not clear with respect to laymen not being able to represent others in a class action, considering the possibility a potential deprivation of protected rights, this case is unique for several reasons. This Court should allow Mescall to shift forward considering the similarly situated circumstances. First, all co-plaintiffs are willing to endorse a waiver accepting the risk of Mescall speaking on behalf of others. Notably, co-plaintiffs will be more than inclined to participate in the proceedings, and finally, Mescall will obey all Federal Rules and not abuse

3

the proceedings. Tellingly, Mescall never solicited anyone nor gave legal advice or received any type of payment whatsoever and only acts in good faith pro bono. Against this backdrop, the elder complex where the plaintiffs live, all share common areas, help, and assist each other and conversate all day every day. To tell you, they are like a family.

The opposition misleadingly adduces that Gerald Mescall is a "serial" pro se plaintiff who has filed numerous frivolous lawsuits that were dismissed- is inaccurate on its face. In truth and fact, Mescall's lawsuits were never deemed frivolous, and Mescall received the relief sought, after the matter was denied by the parties targeted. Additionally, the defenses contention respecting this absurdity is a side show distraction verbally attacking an elder and labeling the same that holds no merit. Because Mescall sought court action for the nazi-like conduct by the defense at Lovers Lawn Trace[i], proves counsel cannot legally rebut accurately the substantive claims and can only attack on a personal level weighing heavy against the balance of equities that appear to be falling short for the defense. Court movement is appropriate.

Courts have been mixed with respect to pro se class matters. Additionally, the Court is free to order each co-plaintiff ample time to seek counsel and if they cannot afford counsel, appoint to satisfy *Rule 23*. In support, a Court may not bypass the requirements of *[Federal Rule of Civil Procedure 23,* but *(Rule 23)*

4

*subsections] (a)* and *(b)* may allow to appoint counsel and 'save' an otherwise inadequate pro se class,". In that regard, the proposed class may not satisfy the commonality and typicality requirements of *Rule 23(a)* and that the petitioner may not be an adequate class representative, but the court can appoint adequate representation. (see) *Thompson v. Wilkie, 18-2169 (Vet. App. Oct 24, 2018)*. In such detail, this Honorable Court can determine that it will use *Rule 23* as a guide in considering requests for class certification for the time being. (See) *Monk v. Wilkie, Vet. App., No. 15-1280 2018 WL 4043242 at *1 (Aug. 23, 2018)*. To justify certification, each of the elements of *Rule 23(a)* must be met. (See) *Amchem Products., Inc. v. Windsor, 521 U.S. 591, 614 (1997); Richards v. Delta Air Lines, Inc., 453 F.3d 525, 529 (D.C. Cir. 2006)*. The party seeking class action bears the burden of proving that the requirements of the class certification rule have been met. (see) *Amchem, 521 U.S. at 614; DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1194 (10th Cir. 2010)*. Because Mescalls underlying claims are the same, all members share the same exact complaints and fears therefore satisfying *Rule 23*. But the certifying court must rigorously analyze the *Rule 23* prerequisites before certifying a class. (see) *Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982)*. The four prerequisites to certify a class action under *Rule 23(a)* are:

**1. Numerosity:** The class is so numerous that the joinder of all members is impracticable.

**2. Commonality**: There are questions of law or fact common to the class.

**3. Typicality:** The claims or defenses of the representative parties are typical of the claims and defenses of the class; and

**4. Adequacy:** The representative parties will fairly and adequately protect the interests of the class. (see) *Thompson v. Wilkie, 18-2169 (Vet. App. Oct 24, 2018.)*

A class action lawsuit is a legal procedure that allows many people, the 'class,' to sue a defendant on similar issues. The lawsuit is led by one or multiple 'class representatives' and all members of the class are bound by the result unless they opt out. In a class action, an appointed counsel represents the class **(1).**

The United States federal court system has a total of thirteen appellate courts, of which the Fourth Circuit Court is one. It is the appellate court for several districts including North Carolina **(2).** The appointment of counsel is guided under the Federal Rules of Civil Procedure, Rule 23(g) which stipulates that the court will appoint one or more members of the bar to represent the class **(3).**

Lawyer payment in class action lawsuits is usually managed on a contingency fee basis. Lawyers are only paid if they win the case, typically a percentage of the settlement or judgment **(4).** This payment plan allows access to justice for those on fixed incomes or without adequate resources to pay an attorney.

Plaintiffs are fixed-income seniors who cannot afford to pay large retainers up front, or their ongoing legal expenses that benefit from these contingency

6

arrangements. Additionally, they have the option to qualify for the Legal Services Corporation (LSC), which Congress established in 1974 to provide financial support for civil legal aid to low-income Americans but its very difficult to get an attorney to help. It appears like a great idea, "on its face," only. **(5).**

Artificial Intelligence (AI) in legal practice is not a novelty. AI can help generate pleadings, where the facts, laws, and contentions forming a suit, or a defense are digitally generated by software. This has been a huge relief for pro se litigants who can't afford legal help. The most common and widely used AI platforms include help draft pleadings, conducting legal research, review contracts among several tasks **(6).**

**References:**
1. *Class Actions. Legal Information Institute, Cornell Law School.*
*https://www.law.cornell.edu/wex/class_action*
2. *Fourth Circuit. United States Court of Appeals, Fourth Circuit.*
*http://www.ca4.uscourts.gov/*
3. *Rule 23. Class Actions, Federal Rules of Civil Procedure.*
*https://www.law.cornell.edu/rules/frcp/rule_23*
4. *Contingency Fees.*
5. *Legal Aid for the Elderly. Eldercare Online. https://www.ec-online.net/knowledge/Articles/legalaid.html*
6. *"How AI And Machine Learning Are Transforming Law Firms And The Legal Sector." Forbes. https://www.forbes.com/sites/bernardmarr/2019/05/23/how-ai-and-machine-learning-are-transforming-law-firms-and-the-legal-sector.*

**Note:** Extensive legal research, such as this, would often require accessing a legal database such as Westlaw or LEXIS-NEXIS, both of which require a subscription to use effectively. Those databases contain most of the case law, statutes, etc. that would be needed to fulfill this query. You may want to consider consulting with a legal professional for an in-depth analysis of this legal query.

### (A.) Frivolity Claims

The defendant asserts that the claims in this case are frivolous. However, it is essential to recognize that the allegations outlined in our Complaint are backed by factual assertions and legal theories which make out cognizable claims for relief. Additionally, the opposition falsely claims that Mescall is a serial pro-se filer who filed frivolous lawsuits when in truth and fact nothing was ever adjudged frivolous, and relief had been granted by the parties involved not by the Court in those matters. Moreover, the standard for determining frivolity involves evaluating whether the complaint lacks an arguable basis either in law or in fact. In this case, we have:

1. **Detailed Specific Instances:** The Complaint outlines specific occurrences, times, and types of alleged misconduct or negligence by the defendant.

2. **Cited Relevant Laws:** The Complaint references the appropriate laws and statutes that the defendant has allegedly violated, demonstrating a legal basis for the claim.

### (B.) Rebuttal of Pro-Se Class Action Claim

It is true that courts generally disfavor allowing pro se litigants to represent a class due to the complexities involved in class action litigation. However, there are

documented instances where a court has allowed a pro se plaintiff to proceed with a class action, especially where the pro se plaintiff is particularly well-informed and the legal issues are relatively straightforward. In this case:

1. **Similarity of Issues and Class Members:** The class members have been subject to similar misconduct by the defendant, and the legal issues are not so complex as to require specialized legal training.

2. **Lack of Other Options:** Class members may not have the financial resources to retain private counsel, making the pro se action one of the few avenues for seeking redress.

3. **Early Stage of Proceedings:** At this juncture, it may be premature to disqualify the case as a class action, particularly without giving the plaintiffs an opportunity to demonstrate their ability to adequately represent the interests of the class. (see) *Phillips v. Ford Motor Co., 472 F.2d 240 (5th Cir. 1973):* This case held that a class representative cannot be a pro se litigant. Not having a lawyer puts the interests of the class representatives at risk and therefore the class representative must acquire legal counsel.

4. **Relevancy Case:** *Oxendine v. Williams, 509 F.2d 1405 (4th Cir. 1975):* In this case, the court allowed a pro se litigant to represent the class, but under limited circumstances. It was only granted because the litigant was incarcerated, had no

9

other means to retain counsel, and there was no one else who could adequately represent the class.

**5.** *Fymbo v. State Farm Fire & Casualty Co., 213 F.3d 1320 (10th Cir. 2000):* This case re-validates that a non-lawyer cannot represent a class as it would put class members at risk due to the lack of legal education.

Finally, it's worth noting that some courts have argued that allowing pro se representation in class action lawsuits would be a violation of ethics rules. This is because the person would be engaging in the unauthorized practice of law by representing others. Despite this, the individual is still allowed to represent themselves in their individual capacity. It should also be noted that while the courts are generally sympathetic to pro se litigants, the rules of procedure and evidence still fully apply, making it a risky move for most people.

## ELDER ABUSE AND USARY RENTAL RATES

Elder abuse, particularly in the context of housing policies and rental rates, is a difficult historical topic to examine. One of the challenges in detecting and addressing this issue is that much of this abuse, particularly financial exploitation like unfairly increasing rental rates for the elderly, often goes unreported. However, over time, states like North Carolina have modified their legislation and raised social awareness to protect senior tenants.

The origins of this specific issue, elder abuse in North Carolina due to

10

Case 3:23-cv-00332-RJC-SCR   Document 18   Filed 10/17/23   Page 10 of 16

increased rental rates, can be traced to the broader phenomenon of elder abuse and the growth of the rental market. As society began living longer, thanks to medical advancements, the elderly population grew. Concurrently, the 1980s saw a steady increase in rental markets due to various economic factors. Unfortunately, this combination led to increased vulnerability of elders to abusive practices, such as excessive rental rates.

Political philosophies related to rights, social contract, and justice have influenced how societies, including the U.S., view and address elder abuse. John Locke, for example, advocated for the rights of the individual, the duty of society to protect these rights, and the social contract that makes such protection possible. Immanuel Kant, on the other hand, emphasized the inherent dignity and worth of every person. These philosophies underscore the importance of safeguarding the elderly from abuse.

In North Carolina, the development of local laws related to elder abuse escalated in the late 20th century. For instance, the North Carolina General Assembly enacted numerous laws designed to protect the aging demographic through regulating rental practices. Significant legislative efforts include the North Carolina Tenant Security Deposit Act and the North Carolina Fair Housing Act. Despite these efforts, elder abuse remains a challenging area to police.

Federal laws also apply to elder abuse in the context of housing in North Carolina.

The 4th Circuit Court of the United States, which hears appeals from the District Courts of North Carolina, has adjudicated cases involving elder abuse consistently with federal legislation such as the Fair Housing Act and the Americans with Disabilities Act. These laws prohibit discrimination in housing, including renting, based on age or disability.

The impacts of political debates and legal changes around elder abuse and housing policies on the functioning of government and society are significant. They have made elder abuse a public health and social justice issue, calling for multifaceted prevention strategies that include legal reforms, education for the public and health professionals, improved reporting, and research, and enhanced social support systems. Moreover, these discussions have also highlighted societal values, such as respect for the elderly and their right to live with dignity.
In summary, elder abuse in the context of housing in North Carolina has evolved through numerous influences over time. While a challenging issue, public awareness, legal reforms, and societal values regarding elderly rights have driven progress in protecting this vulnerable population. Nonetheless, more efforts are needed to fully combat this complex issue at the state and federal level.

## KEY LEGAL POINTS

Summary of Key Points Related to *Americans with Disabilities Act (ADA),* and more recently, the *Affordable Care Act*;

### 1. Americans with Disabilities Act (ADA)

Under the *ADA*, it's illegal to discriminate against people with disabilities in several areas, including housing. *ADA* prohibits landlords from refusing to rent to tenants solely due to a disability. *Title III* of the *ADA* pertains directly to public accommodations and commercial facilities. It requires that landlords must make "reasonable accommodations" to allow tenants with disabilities the equal opportunity to use and enjoy their homes and common spaces. *ADA* and *Fair Housing Act (FHA)* also address the issue of service animals and emotional support animals. Landlords must make reasonable accommodation for such animals, although there are certain restrictions. (Reference) *42 U.S.C. §12182 (https://www.law.cornell.edu/uscode/text/42/12182)*

### 2. Affordable Care Act (ACA)

While the *ACA* does not directly address rental rates, it supports elders by ensuring they have affordable, quality health care that can help minimize medical costs, freeing up resources for housing costs. The *ACA* provides certain protections for elders, such as preventing insurance companies from charging seniors more than three times the rates for younger people. It also offers Medicare recipients continued access to free preventive services, annual wellness visits, and a 50% discount on prescription drugs in Medicare Part D's "donut hole." (see) *42 U.S.C. §18001 (https://www.law.cornell.edu/uscode/text/42/18001)*

### 3. North Carolina State Laws on Rental and Elder Abuse

The North Carolina General Statutes, Chapter 42 (Landlord and Tenant) regulate rental rates and agreements within the state. North Carolina law considers extreme neglect or exploitation of an elder's resources, including housing, as elder abuse. The state's elder abuse statute is found in *North Carolina General Statutes, Chapter 108A, Article 6, Adult Protective Services. Chapter 42:*

*https://www.ncleg.gov/Laws/GeneralStatutes/Chapter42*

*Chapter 108A, Article 6:*

*https://www.ncleg.gov/Laws/GeneralStatutes/Chapter108A/Article6*

Please note that although the Fourth Circuit Court of Appeals holds appellate jurisdiction over the district courts in part of the federal judiciary system, specific North Carolina laws, as state laws, would typically be overseen by the Fourth Circuit in the wake of a federal question jurisdiction.

### Request for Relief

Given that the defendant's claims of frivolity and impermissibility of a *pro se* class action are not well-founded, we respectfully request that the court deny the defendant's motion to dismiss and allow this case to proceed to the discovery stage. At the very least, we request an opportunity for oral argument to further clarify our position and address any concerns the Court may have

14

Case 3:23-cv-00332-RJC-SCR   Document 18   Filed 10/17/23   Page 14 of 16

---

[i] Lover Lawn Trace is the address where all the plaintiffs "elder class," and the defense works there.

*[signature: Gerald Mescall]*

GERALD T. MESCALL
1721 LOVERS LAWN TRACE
APT. 404

CORNELIUS, NC 28031

10/9/23

Gerald T. Mescall

**CERTIFICATE OF SERVICE***

v.

Docket Number: 3:23-CV-332 RJC

Renaissance At Antiquity et al

I, Gerald Mescall, hereby certify under penalty of perjury that
(print name)

on 10/9/23, I served a copy of Response To Defendants
(date)

Motion To Dismiss
(list all documents)

by (select all applicable)**

___ Personal Delivery    _X_ United States Mail    ___ Federal Express or other Overnight Courier

___ Commercial Carrier    ___ E-Mail (on consent)

on the following parties:

Clerk, US Dist Court  401 West Trade St  Charlotte  NC
Name                    Address              City        State    Zip Code

Adversary Counsel For Renaissance at Antiquity et al.
Name                    Address              City        State    Zip Code

_____
Name                    Address              City        State    Zip Code

_____
Name                    Address              City        State    Zip Code

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

10/9/23                                          [Signature]
Today's Date                                     Signature

Certificate of Service Form (Last Revised 12/2015)